IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 21-cr-217-DLF |
| | : | |
| LUIS HALLON, | : | |
| Defendant. | : | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Mr. Luis Hallon. There can be no dispute that the Court has a duty to deliver a sentence which are not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Hallon requests the Court to impose a sentence of twelve (12) of months unsupervised probation coupled with community service hours, considering:

(1)     His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building;

(2)     His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

(3)     To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

## I.    CASE BACKGROUND

On June 16, 2022, a criminal complaint [1] was filed in U.S. District Court for the District of Columbia charging Mr. Luis Hallon, with four (4) misdemeanor offenses related to his conduct on January 6, 2021.[1] On June 15, 2022, he was arrested in St. Cloud, Florida. On June 16, 2022 an Information issued charging the same four misdemeanors. [7] On June 23, 2023 he was presented in this Court and he was released by U.S. Magistrate Judge Zia M. Faruqui on personal recognizance with standard conditions. [12]

On December 14, 2022, Mr. Hallon appeared (VTC) before U.S. District Judge Dabney L. Friedrich and the Court accepted a voluntary guilty plea as to Count Four of the Information: 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement, [66] Mr. Hallon has agreed to $500.00 restitution and a $10.00 special assessment.

It is counsel's understanding that Mr. Hallon is in compliance with all of his conditions of release.

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

The USPO Sentencing Recommendation [32] proposes a period of probation of 24 months.

Sentencing is scheduled for April 26, 2023, at 9:00 a.m. (VTC)

## II.      LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
> (5)) any relevant "policy statements" promulgated by the Commission;
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

A.     Nature and Circumstances Of The Offense

Mr. Hallon, who lives in St. Cloud, Florida, traveled to Washington, D.C.,
with his partner / fiancé, Traci Isaacs, William Isaacs and Leslie Gray. On January
6, 2021, Mr. Hallon joined the protest on the East Side of the U.S. Capitol Building.
He and Traci Isaacs entered the Capitol Building at approximately 3:02 p.m.
through the Columbus Doors. He took some pictures and videos on his cell-phone,
then left the building at approximately 3:16 p.m. He was inside the Capitol building
for approximately 14 minutes. On January 25, 2023, he texted Ms. Isaacs with a
non-violent and non-threatening comment about his experience being inside. All of
this is confirmed by the Statement of Offense. [25]

After watching video clips of January 6th after-the-fact, he regrets that he
was any part of it of the events. Mr. Hallon did not join with the violent protesters
who assaulted police officers and caused property damage to the U.S. Capitol.

Mr. Hallon was not part of a group which either organized activities on
January 6th, nor does he subscribe to any far-right political views. He had no idea
where he was while he was in the Capitol building, he was only briefly inside the
building, and to this day could not navigate the building.

The government concedes that Mr. Hallon committed no violent acts and
destroyed no property. His actions within the U.S. Capitol have been tracked on the
CCTV footage and this demonstrates that while unlawfully present in the Capitol
with no excuse, he did not destroy property, steal property, commit violent acts, or
encourage others to do so. Furthermore, Mr. Hallon did not exercise managerial
authority over any other participant and, thus, he was average or minor participant

whose conduct was not peripheral to the advancement of the offense. He merely went inside for a very short period of time (14 minutes) with his fiance and others.

**Post-January 6, 2021**

To his credit, Mr. Hallon has fully acknowledged his misconduct. He pled guilty at a pre-trial stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office.

It is noted "During the pre-sentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea." *See* PSR [32] ¶23. Also, the USPO Sentencing Recommendation [32] notes his "culpability appears to be minimal . . ."

Mr. Hallon has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him. (as more fully described below)

**B.    History and Personal Characteristics of Mr. Hallon**

Mr. Hallon (age 68 – DOB: 04/19/1955) was born in Guayaquil, Equador. He is a permanent Resident of the United States. Although now divorced, both his parents are alive and living in the United States.  He has two brothers and two sisters, with whom he enjoys close relationships. Another brother (Fernando Hallon) died from COVID-19 in 2020.

Mr. Hallon arrived in the United States when he was 14. He enjoyed a happy childhood.

After 20 years of their relationship, Mr. Hallon married Traci Isaacs in a Catholic ceremony in 2022. Religion is an ever-present part if their family life. They have two children together, ages 17 & 10.  His minor daughter is handicapped and she cannot function on her own. She needs constant attention, which Mr. Hallon is a large part of her daily supervision. His minor son has incurred mental health issues as a result of the police "raiding" the family home when Mr. Hallon was arrested in this case. His son was traumatized when seeing his home relentlessly searched by police officers and when his father placed in handcuffs and taken away by police officers.

Furthermore, Mr. Hallon has three adult children from an earlier relationship. Also, Ms. Issac's mother currently lives with entire family and she has significant health issues necessitating daily care which Mr. Hallon partially provides to her.

Mr. Hallon reports he was diagnosed with thymic cancer in 2010. He underwent surgery and substantial radiation & chemotherapy treatments. Consequently, his physical abilities are restricted and he follows a special diet of "soft foods." He contracted COVID-19 in 2020, for which he was hospitalized for four days.

He has a limited history of alcohol/drug usage. However, due to his ongoing discomfort from the cancer surgery and subsequent radiation & chemotherapy treatments, a physician issued to him a marijuana license in 2020/21, which has

expired. Until his bout with cancer and recovery, he never used marijuana except one time in college. He used marijuana strictly in connection with his doctor's orders and a medical marijuana license. He rarely drinks alcohol, usually only at occasional parties or a glass of wine with dinner.

He received his high school degree in 1973 and has attended some college. He is presently self-employed, working from his home, and he is receiving disability payments. In 2019, he started an international shipping business but it is not very successful. As a consequence of the pandemic, his business efforts are hampered but he is working daily and is optimistic that things "will turn around" in the foreseeable future.[2]

The following persons have submitted letters in support of Mr. Hallon:

1.    Richard Hallon – Father of Luis Hallon.

2.    Cecilia Rakiewicz – Sister of Mr. Hallon.

3.    Fallon Owens – Friend of Mr. Hallon.

Also, as noted herein and in the PSR, the United States Sentencing Guidelines do not apply in this case as his conviction is a Class B Misdemeanor.

He qualified for court-appointed counsel thus, any extraordinary fine imposed by the Court will be a heavy burden on him. In addition, the PSR indicates

---

[2]    Mr. Hallon is requesting the Court <u>not</u> to impose the standard sentencing condition regarding no "new credit charges, or open additional lines of credit without approval of the probation officer." As an independent business operator, he needs the flexibility to procure "spot" lines of credit as he deals with truckers, ocean carriers, warehousing operators, shipping ports and terminals – often on an "as needed" or on an immediate basis.

that "Based upon the defendant's financial profile, it dies not appear he has the resources to pay a fine in addition to his restitution obligation." PSR [32], ¶ 62.

All of the above personal factors, as well as his law abiding life and his post arrest behavior, demonstrate he is capable of being a productive citizen, which the Court can rely on as a basis to sentence him to a short term of unsupervised probation when it considers the §3553 factors.

### C.   General Deterrence – 18 U.S.C. § 3553(a)(2)(B) – To Adequately Deter Others From Criminal Conduct

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical

research stating that "prison sentences are unlikely to deter future crime," and

"increasing the severity of punishment does little to deter crime." U.S. Dep't of

Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know*

*About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-*

*First Century*, 42 Crime & Justice in America 199 (2013)), available at

https://ncjrs.gov/pdffiles1/njj/247350.pdf.

**D.    Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) –**
      **To Protect the Public From Further Crimes Of The Defendant**

Mr. Hallon's likelihood of recidivism is very low. He has expressed genuine

remorse and contrition, has cooperated fully with law enforcement and he accepted

the first plea offer tendered with no hesitation. His acceptance of responsibility was

complete and without reservation. Research has consistently shown that while the

certainty of being caught and punished has a deterrent effect, "increases in severity

of punishments do not yield significant (if any) marginal deterrent effects." Michael

Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three

National Academy of Science panels… reached that conclusion, as has every major

survey of evidence." *Id*.; See *also* Zvi D. Gabbay, *Exploring the Limits of the*

*Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An*

*Analysis of Recent Research (1999),* summary available at

http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by

the British Home Office, examined penalties in the United States as well as several

European Countries. *Id*. at 1. It examined the effects of changes to both the

certainty and severity of punishment. *Id.* While significant correlations were found

between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates...were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Mr. Hallon age (45), and other issues consistent with what is mentioned above, the likelihood of Mr. Hallon ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter him.

### IV.   <u>The Need To Avoid Unwarranted Sentence Disparities</u>

Mr. Hallon urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. Compared to many other misdemeanor cases which have been filed in this Court, Mr. Hallon's conduct is among the most peaceful and non-threatening.

As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with any extremist or organized group. Mr. Hallon did not incite others to commit acts of violence or destruction. He did not engage in any violence or questionable conduct towards law

enforcement. He did not destroy or steal any property from the U.S. Capitol building. Fifth, based on the Government's own investigation, He remained in a limited part of the building for six minutes in total. And the defense is not aware of any evidence suggesting that Mr. Hallon entered into the Senate or House Chambers, or any other area other than the Rotunda.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling of January 6th U.S. Capitol breach cases, where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, the Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cell-phone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, the Court imposed 12 months probation. Mr. Lewis was inside the Capitol Building for approximately 7 minutes.)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, the Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, the Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted.)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment, however the Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes.)

- *United States v. Gary Edwards,* 21-cr-00366-JEB (Government requested 14 days imprisonment however this Court imposed 12 months probation. Mr. Edwards was inside the Capitol building for approximately 24 minutes.)

- *United States v. Douglas F. Macrae,* 22-cr-00181-JEB (Government requested 4 months home detention however, this Court imposed 12 months probation. Mr. Macrae was in the Capital building for approximately 3 minutes and he posted comments on social media.)

- *United States v. Caleb Jones,* 21-cr-00321-JEB (Government requested 36 months probation with 3 months of home detention however, this Court imposed 24 months probation with 2 months home confinement. Mr. Jones was inside the Capitol building for a short period of time)

- *United States v. Paula Conlon*, 22-171-JMC (Government requested 60 days imprisonment, however the Court imposed 12 months probation. Ms. Conlon was inside the Capitol building for approximately 3 minutes, and she posted comments & photos to social media.)

- *United States v. Bryan Bustos*, 22-16-CJN (Mr. Bustos was inside the Capitol Building for approximately 11 minutes. Government requested 14 days incarceration, the Court impose 24 months of probation.)

None of this is to suggest that any of these examples, for a conviction of 40

U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home

detention, but only to suggest there is nothing materially different about Mr. Hallon or his conduct which would justify a sentence of incarceration / home detention. Judges of this district court have sentenced many January 6th misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention or just a fine.

Mr. Hallon was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Hallon's conduct on January 6, 2021, as well as his personal characteristics.

## **CONCLUSION**

Mr. Hallon respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) his immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and, (3) to avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, he asks that the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a

-13-

period of incarceration warranted, Mr. Hallon, asks that he be allowed to serve it on weekends, which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH). [3]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant (additional) fine. He will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Luis Hallon respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider Mr. Hallon as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

---

[3]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision. PSR [32] at ¶ 78.

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2023, I caused a copy of the foregoing Memorandum in Aid of Sentencing, submitted on behalf of Mr. Luis Hallon, to be served by CM/ECF to case registered parties.


_____

Allen H. Orenberg